UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **GENERAL PLASTICS & COMPOSITES, L.P.**, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Case No.: 5: 21-cv-00294 |
| **LONGBOW COMPLETION SERVICES, LLC**, | § § § § | |
| Defendant | | |

**GENERAL PLASTICS & COMPOSITES, L.P.'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
AGAINST LONGBOW COMPLETION SERVICES, LLC**

General Plastics & Composites, L.P., Plaintiff ("***GP&C***"), hereby asserts the following claims of patent infringement against Defendant Longbow Completion Services, LLC ("***Longbow***"). This Complaint is brought at least in part because Longbow makes, uses, and sells products that directly infringe U.S. Patent No. 9,157,288 ("the '288 Patent").

**A.    NATURE AND BASIS OF ACTION**

1.    This is a civil action for the infringement of the '288 Patent under the Patent Laws of the United States 35 U.S.C. § 1, et seq.

**B.    PARTIES, JURISDICTION, AND VENUE**

2.    GP&C is a Texas limited partnership with its principal place of business at 6910 E. Orem, Houston, Texas 77075.

3.    On information and belief, Longbow is a Texas limited liability company with its principal place of business at 4109 E. Country Road 63, Midland, Texas 79705. On information and

1

28395141v.3

belief, Longbow's registered agent is Kimberly K. Klassen and can be served at its principal address above.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, because it arises under the Patent Laws of the United States at United States Code Title 35.

5. The Court has personal jurisdiction over Longbow, because, *inter alia*, Longbow has a principal place of business in this District.

6. Venue is proper under 28 U.S.C. § 1400, because of Longbow's business location and activities in this District.

### C. FACTUAL BACKGROUND

7. GP&C designs, makes, and sells oil field downhole plugging tools, such as frac plugs, and associated components.

8. These tools generally have multiple components made of high strength composite material of wound fibers and resin.

9. Frac plugs are generally secured at a desired depth to an inner wall of a tubular casing that has been placed in the wellbore to perform designated operations in the well.

10. Frac plugs can be placed in a wellbore, designated operations performed with the frac plug, and then the frac plug drilled out of the wellbore for further operations below the frac plug.

11. A component used to secure the frac plug to the casing wall is known as a "slip".

12. The slip can be actuated to slide up an angled surface, such as a wedge-shaped surface, and expand outwardly toward a casing wall in the wellbore.

13. Several angled surfaces can be formed on a component known as a "cone" peripherally around a frac plug mandrel.

14. A slip can have several corresponding surfaces that engage the several angled surfaces of the cone to help expand uniformly outwardly toward the casing wall.

15. When a slip outwardly expands enough to firmly engage the casing wall, the slip secures (or helps "set") the frac plug inside the casing in the wellbore.

16. One slip and cone assembly is patented by GP&C in United States Patent No. 9,157,288 (the '288 Patent). The United States Patent and Trademark Office granted the '288 Patent in October 2015. A true and correct copy is attached as **Exhibit** 1.

17. GP&C owns the '288 Patent by assignment from its inventor. The assignment is recorded at Reel/Frame Reel/frame 028756/0409 in the United States Patent Office and is publicly available at https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=9157288&type=patNum.

18. Certain features of the slip and cone assembly claimed in the '288 Patent provide ease of use and consistency that is particular to a composite material in setting the tool in the wellbore.

19. Below is a true and correct copy of Figure 2 of the '288 Patent. Figure 2 illustrates the composite slip and cone assembly 350.

28395141v.3



FIG. 2

20. The slip 306 in Figure 2 can be a one-piece slip with grooves 310 and a remaining amount of material 320 across the grooves.

21. The remaining amount of material 320 temporarily holds the slip together. The cone 314 is shown with the several angled surfaces 324.

22. When actuated in the wellbore, the slip 306 slides longitudinally closer to the cone 314 and up the angled surfaces 324 to expand outwardly toward the casing wall.

23. Below is a true and correct copy of Figure 1A of the '288 Patent. Figure 1A illustrates a downhole tool 200, such as a plugging tool, including a frac plug.

28395141v.3



FIG. 1A

24. The downhole tool 200 uses one or more composite slip and cone assemblies 250 having a slip 206 and a cone 214.

25. Based on information and belief, Mr. Chris Crews, Manager of Longbow, lives in a bedroom community of Houston named Splendora.

26. Mr. Crews was previously a Technical Sales Specialist for Superior Energy Services ("*Superior*") in Houston, Texas.

27. Superior was a customer of GP&C at the time of Mr. Crews' employment with Superior.

28. GP&C supplied Superior with GP&C's patented composite slip and cone assemblies for Superior's frac plugs.

5

28395141v.3

29. While working for Superior, Mr. Crews sold such frac plugs with GP&C's patented composite slip and cone assemblies to Superior's customers.

30. On information and belief, Mr. Crews left Superior in July 2019 for employment as a Technical Sales Representative for Gryphon Oilfield Solutions ("*Gryphon*") in Houston.

31. Gryphon was another customer of GP&C at the time of Mr. Crews' employment with Gryphon for the composite slip and cone assemblies.

32. On information and belief, Mr. Crews continued his technical sales at Gryphon with frac plugs having GP&C's patented slip and cone assemblies.

33. On information and belief, Mr. Crews left Gryphon in March 2020 and in April 2020 formed Longbow.

34. On information and belief, Mr. Piro Shkurti was previously employed as an Engineering Project Manager at Superior.

35. On information and belief, as Engineering Project Manager at Superior, Mr. Shkurti acquired knowledge of GP&C's composite slip and cone assembly.

36. On information and belief, Mr. Shkurti left his employment at Superior in April 2020.

37. On information and belief, Mr. Shkurti left Superior in or about the same month that Mr. Crews helped form Longbow.

38. On information and belief, in 2020, Mr. Crews and Mr. Shkurti discussed leaving employment at their then-current employers and creating an entity to make (or have made), offer to sell, or sell frac plugs.

28395141v.3

39. On information and belief, in 2000, Mr. Crews and Mr. Shkurti left their employment at their then-current employers and created an entity to make (or have made), offer to sell, or sell frac plugs.

40. On information and belief, Mr. Crews and Mr. Shkurti, prior to about April 2020, discussed creating an entity that would make (or have made), offer to sell, or sell frac plugs.

41. On information and belief, prior to about April 2000, Mr. Crews and Mr. Shkurti discussed making frac plugs similar to at least some GP&C frac plugs.

42. On information and belief, in 2000, Mr. Crews and Mr. Shkurti discussed making frac plugs similar to at least some GP&C frac plugs which they had become familiar with while working at Superior.

43. On information and belief, prior to about April 2000, Mr. Crews and Mr. Shkurti discussed making frac plugs similar to at least some GP&C frac plugs which they had become familiar with while working at Superior.

44. On information and belief, Longbow hired Mr. Shkurti as Lead Engineer.

45. On information and belief, Mr. Crews and Mr. Shkurti used their knowledge of GP&C's composite slip and cone assembly to assist them in making (or having made), offering for sale, and selling frac plugs.

46. On information and belief, Longbow's frac plugs use GP&C's patented design of the composite slip and cone assemblies.

47. Longbow became a direct competitor of GP&C.

48. Within a few months of Longbow's formation, GP&C discovered Longbow and wrote a letter in August 2020 to Mr. Crews, as the Manager of Longbow, providing a copy of the '288 Patent and two other patents owned by GP&C.

49. The letter provided notice to Mr. Crews of GP&C's concerns that Longbow could be using GP&C's proprietary rights and requested information from Longbow.

50. Unknown to GP&C, the '288 Patent had temporarily lapsed. Upon learning of the lapse on February 17, 2021, GP&C revived the patent.

51. The '288 Patent was revived on February 17, 2021.

52. The '288 Patent is retroactively enforceable to the date of the lapse as qualified by 35 U.S.C § 41(c)(2).  35 U.S.C § 41(c)(2) applies in two scenarios.  The first scenario, assuming *arguendo* that Longbow qualifies, ensures that even though a lapsed patent has been revived, Longbow can "continue the use of, to offer for sale, or to sell to others to be used, offered for sale, or sold, the specific thing *so made* [during the lapse period], purchased, offered for sale, used, or imported" as stated in the first portion of such statute. *Id*. (emphasis added). Under the first scenario, Longbow can use or sell such products made during the lapse.

53. Under the above quoted provision of 35 U.S.C § 41(c)(2), Longbow does not have the right to *further* make (or have made) such products that infringe the '288 Patent after the '288 Patent was revived.

54. 35 U.S.C § 41(c)(2) *does not* provide unfettered rights for Longbow to continue such activities after the '288 Patent was revived.

55. Rather, the second scenario of 35 U.S.C § 41(c)(2) states that the Court has discretion to consider the equities and decide whether to allow any continuation of activities that would be infringing unless permitted by the Court.

56. The second scenario of 35 U.S.C § 41(c)(2) states that "court . . . *may* provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, or used within the United States . . . as the court deems equitable for the protection of investments made or business commenced [during the lapse]". *Id*. (emphasis added).

57. This second scenario of 35 U.S.C § 41(c)(2) is an equitable decision that can only be resolved by the Court after full hearing on the facts.

### C.   LONGBOW'S INFRINGEMENT OF U.S. PATENT NO. 9,157,288

58. GP&C incorporates its allegations in each of the preceding paragraphs.

59. There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1, et seq. concerning Longbow's infringement of one or more claims of the '288 Patent.

60. On information and belief, Longbow is making, using, selling, and/or offering for sale "REAPER" composite plugs ("Accused Product"), as seen at https://www.longbowcs.com/.

61. On information and belief, Longbow has directly infringed claims of the '288 Patent, including at least claim 1 as detailed below, under 35 U.S.C. § 271(a) by making (or having made), using, selling, and/or offering for sale "REAPER" composite plugs ("Accused Product"), as seen at https://www.longbowcs.com/.

9

62. A true and correct printed copy of Longbow's Home webpage at https://www.longbowcs.com/ is attached as **Exhibit 2**. A portion of such webpage is copied below.



63. The above depiction of the Accused Product from Longbow's website accurately depicts the actual Accused Product that Longbow is making or having made or both.

64. The above depiction of the Accused Product from Longbow's website accurately depicts the actual Accused Product that Longbow is using.

28395141v.3

65. The above depiction of the Accused Product from Longbow's website accurately depicts the actual Accused Product that Longbow is offering for sale or selling or both.

66. The structural elements that are visible from the depiction are accurate depictions of the actual Accused Product.

67. The structural elements shown in the above depiction of the Accused Product show that the Accused Product infringes at least claim 1.

| Claim 1 of US Pat. No. 9,157,288 | Longbow REAPER Accused Product |
|---|---|
| 1. A slip and cone assembly for a downhole tool, the assembly comprising: | |
| a composite slip comprising a one-piece configuration and having a plurality of planar slip surfaces; and | |
| a cone having a cone end configured for engagement with the composite slip, | |
| wherein the cone end comprises a plurality of planar cone surfaces configured to engage with the respective plurality of planar slip surfaces, | |

28395141v.3

| | |
|---|---|
| wherein the cone end comprises a raised surface disposed proximate an area of intersection between at least two of the plurality of planar cone surfaces, | |
| wherein the raised surface comprises a tapered surface converging toward a narrowed tip, and | |
| wherein the composite slip and the cone are configured for application of a load therebetween that results in a fracture proximate to an area of intersection between at least two of the plurality of planar slip surfaces. | |

68. Longbow, in violation of 35 U.S.C. § 271, has infringed, literally and/or through the doctrine of equivalents, and continues to infringe the '288 Patent by making, using, selling, and/or offering for sale in the United States assemblies that fall within the claims of the '288 Patent.

69. Longbow has had actual notice of the '288 Patent since at least as early as its receipt of GP&C's August 2020 letter to Mr. Crews at Longbow.

70. On information and belief, Longbow has indirectly infringed at least claim 1 of the '288 Patent under 35 U.S.C. § 271(b), literally and/or under the doctrine of equivalents, by actively, knowingly, and intentionally inducing infringement of the '288 Patent by others (e.g., Longbow's customers, partners, and/or third parties) through their infringing use of the components patented under the '288 Patent.

28395141v.3

71. On information and belief, Longbow has continued and will continue to infringe one or more claims of the '288 Patent unless enjoined by this Court.

72. As a direct and proximate result of Longbow's infringement of the '288 Patent, GP&C has been and continues to be damaged in an amount yet to be determined.

73. On information and belief, the ownership of Longbow derives revenue from the sales of the Accused Products by Longbow.

74. Unless Longbow's ongoing infringement is enjoined, GP&C will suffer irreparable injury for which there is no adequate remedy at law.

## GP&C'S PRAYER FOR RELIEF

GP&C respectfully requests that the Court:

A. Enter judgment in GP&C's favor that Longbow has infringed the '288 Patent;

B. Enter an order stating that Longbow is liable to GP&C for damages due to any relevant products made after the revival of the '288 Patent in an amount not less than recovery of lost profits, a reasonable royalty, treble damages, costs, expenses, and prejudgment and post-judgment interest for Longbow's infringement of the '288 Patent, as provided under 35 U.S.C. § 284;

C. Enter an order permanently enjoining Longbow and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other actors acting in active concert therewith from further infringing the '288 Patent, as provided under 35 U.S.C. § 283, according to equitable considerations by the Court;

D.	Grant such other and further relief that the Court deems just and appropriate in law or equity.

## GP&C'S JURY DEMAND

GP&C requests a trial by jury on all issues so triable.

Dated: March 24, 2021

Respectfully submitted,

JACKSON WALKER L.L.P.
112 E. Pecan St. Suite 2400
San Antonio, TX 78205
(210) 978-7700 – Main Telephone
(210) 978-7790 – Main Facsimile

By: */s/ Robert L. Soza, Jr.*
　　Robert L. Soza, Jr.
　　State Bar No. 18869300
　　rsoza@jw.com
　　Cline White
　　State Bar No. 00785229
　　cwhite@jw.com
　　*Attorney-in-Charge*

　　*Of Counsel:*
　　D Brit Nelson
　　State Bar No. 14888660
　　SD Texas Bar No. 23680
　　1401 McKinney Street, Suite 1900
　　Houston, Texas 77010
　　(713) 752-4200 – Main Telephone
　　713) 752-4221 – Main Facsimile
　　Email: bnelson@jw.com
　　*By permission of Attorney-in-Charge

**ATTORNEYS FOR PLAINTIFF**

28395141v.3